UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAJESH TANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| T-MOBILE USA, INC., | ) | Case No. 1:12-cv-10261 |
| | ) | |
| Defendant. | ) | Judge John W. Darrah |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Rajesh Tank filed a Complaint against Defendant T-Mobile USA, Inc. on

December 21, 2012. Defendant filed a Motion to Dismiss the Complaint on January 28, 2013,

which Defendant subsequently withdrew without prejudice and with leave to re-file on February

5, 2013. Plaintiff then filed a First Amended Complaint ("FAC") on February 27, 2013, alleging

four counts against Defendant: (I) Defendant violated the Telecommunications Act of 1996

("TCA"), 47 U.S.C. § 201 *et seq.*; (II) Defendant discriminated against Plaintiff by denying him

equal terms, conditions, benefits, or privileges of employment because of his race or national

origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (III)

Defendant terminated Plaintiff's employment because of his race or national origin, in violation

of Title VII; and (IV) Defendant retaliated against Plaintiff for engaging in protected activity, in

violation of Title VII.

Defendant moves to dismiss all four counts of Plaintiff's FAC with prejudice. Defendant

contends the Title VII claims are barred under a theory of impermissible claim-splitting and that

Plaintiff failed to properly state a claim under the TCA. Plaintiff opposes the motion, which has

been fully briefed.

## BACKGROUND

Plaintiff was an employee for Defendant from approximately January 2000 through his termination on August 4, 2010, serving in a variety of management roles, including Vice President of Engineering and Operations at Defendant's Chicago corporate office. (FAC ¶¶ 15-22.) Throughout his employment, Plaintiff received strong performance evaluations and numerous company awards. (*Id.* ¶¶ 25-29.) Plaintiff was born in India and is non-white. (*Id.* ¶ 15.)

Defendant collects its customers' proprietary network information ("CPNI") in the course of its operations as a telecommunications provider; this information included when calls were made, to whom, and for how long. (*Id.* ¶ 30.) Employees of Defendant, including Plaintiff, often subscribed to Defendant for their own personal cell phone service. (*Id.* ¶ 31.) In late May 2010 or early June 2010, Defendant improperly accessed Plaintiff's and other employees' CPNI while conducting internal investigations of Plaintiff and other employees; Defendant did so without first obtaining Plaintiff's consent, in violation of the TCA. (*Id.* ¶¶ 32-34.) Plaintiff did not learn of Defendant accessing his CPNI in 2010 until May 2012. (*Id.* ¶ 37.) Defendant lacked procedural safeguards for protecting customers' CPNI and did not have a policy for obtaining consent from customers before accessing their CPNI, which led Plaintiff to believe that Defendant's practice of improperly accessing customers' CPNI was routine and prevalent. (*Id.* ¶¶ 35-36.)

Defendant's white employees received higher pay and more lenient discipline for wrongdoings, as compared to Plaintiff and other non-white employees. (*Id.* ¶¶ 44, 47, 52-54.) For example, Plaintiff learned of an incident in October 2009, involving a General Manager in a Kansas City T-Mobile office who mocked people with Indian accents in front of other

employees.  (*Id.* ¶ 55.)  Plaintiff reported the incident to Human Resources; however, that General Manager was put on a performance improvement plan, and not terminated, as Defendant's policy requires.  (*Id.* ¶¶ 60-61.)  Consequently, Plaintiff, questioned Human Resources over the lenient punishment and urged further action, causing Defendant's Director of Human Resources to eventually terminate the General Manager.  (*Id.* ¶¶ 61, 64.)

After that incident, the Human Resources employee who had investigated the incident, Lisa McAuliffe, warned Plaintiff on approximately April 26, 2010, that he was on her "shit list" and that he should "watch out."  (*Id.* ¶ 66.)  Because of McAuliffe's statements and other similar incidents, Plaintiff prepared a memorandum detailing all his observations of discriminatory conduct and treatment by T-Mobile employees and gave it to Mavers, the Director of Human Resources, in June 2010, who told Plaintiff, "I wouldn't submit this if I were you."  (*Id.* ¶¶ 69-70.)  Plaintiff interpreted this statement as a warning of potential retaliation against him and his potential termination if he submitted the memorandum to Human Resources.  (*Id.* ¶ 71.)

After Plaintiff gave his memo to Director Mavers, Human Resources began investigating Plaintiff with the goal of finding a reason to terminate him but did not inform Plaintiff he was the subject of the investigation.  *(Id.* ¶¶ 72, 74.)  In conducting the investigation, Mavers and two investigators interviewed Plaintiff on approximately July 15, 2010, and then, later that same day, Human Resources recommended Plaintiff's termination to his boss, Neville Ray.  (*Id.* ¶¶ 75, 79.)  On August 4, 2010, both Mavers and Ray informed Plaintiff of his termination.  (*Id.* ¶¶ 81-82.)

Plaintiff alleges three counts against Defendant for violation of Title VII under the theories of unequal treatment, improper termination, and retaliation against protected activity, as well as a claim against Defendant for violation of the TCA.

*Prior and Concurrent Procedural History*

Plaintiff previously brought an action against Defendant in the Northern District of

Illinois. In a case before the Honorable Ronald A. Guzman, *Tank v. Deutsche Telekom AG*, Case

No. 1:11-cv-04619 ("*Tank I*"), that was filed on July 8, 2011, Plaintiff alleged, among other

claims,[1] three counts against Defendant[2] for violations of the Civil Rights Act, 42 U.S.C. § 1981:

(I) denial of equal terms, conditions, benefits, or privileges of employment based on race or

national origin; (II) termination of employment on the basis of race or national origin; and (III)

retaliation against an employee engaging in protected activity. (Def.'s Mot. Ex. A ¶¶ 144-163.)

Prior to filing his complaint in *Tank I*, Plaintiff filed a discrimination charge with the

Equal Employment Opportunity Commission ("EEOC") on April 8, 2011. (FAC ¶¶ 102-03.)

Plaintiff stated in a footnote in his *Tank I* complaint that he intended to allege Title VII claims

against Defendant and that he would seek to amend that complaint to add Title VII claims upon

receipt of a notice of a right-to-sue letter from the EEOC. (Def.'s Mot. Ex. A at 4 n.1.) The

EEOC investigated Plaintiff's discrimination claim against Defendant, requesting and receiving

information from both parties in August 2012 and requesting a settlement demand from Plaintiff

in September 2012. (FAC ¶ 103.) In late September 2012, the EEOC informed Plaintiff it was

unlikely the EEOC would reach a finding in Plaintiff's favor; thereafter, Plaintiff requested a

---

[1] Beyond the claims relevant to this analysis, Tank alleged three state-law claims in *Tank I*, including: common-law defamation, an Illinois Personnel Record Review Act claim, and an Illinois Wage Payment & Collection Act claim. (Def.'s Mot. Ex. A ¶¶ 164-192.)

[2] The Complaint at issue here was filed against Defendant T-Mobile USA, Inc.; the suit filed before Judge Guzman named T-Mobile USA, Inc., as well as Deutsche Telekom AG and T-Mobile International, Inc., as defendants. Both T-Mobile International AG and T-Mobile USA, Inc. are wholly owned subsidiaries and operating entities of Deutsche Telekom AG. (Def.'s Mot. Ex. A ¶¶ 12-13.)

4

notice of right-to-sue letter from the EEOC on September 26, 2012, receiving the letter on approximately October 4, 2012.  *(Id.* ¶¶ 104-05.)

During a court proceeding in *Tank I* on November 30, 2012, Plaintiff first informed Judge Guzman of his desire to amend the complaint to add Title VII and Telecommunications Act claims.  (Def.'s Mot. Ex. D at Tr. 2:18-3:9, Nov. 30, 2012.)  This request for leave to amend the complaint came approximately one month after the date discovery was to close.  (Def.'s Mot. Ex. B.)  Furthermore, Plaintiff's request to amend was almost ten months after the deadline of February 10, 2012, to amend pleadings or add parties.  (Def.'s Mot. Ex. C.)  On December 12, 2012, Judge Guzman denied Plaintiff's motion to amend the complaint in *Tank I*.  (Def.'s Mot. Ex. E at Tr. 8:6-9:11, Dec. 12, 2012.)

Defendant filed a summary judgment motion in *Tank I* on January 16, 2013, seeking summary judgment in its favor on all of Plaintiff's claims.  (See *Tank I*, Case No. 11-C-4619, Dkt. No. 88.)  The motion was fully briefed by the parties, and on April 19, 2013, Judge Guzman granted Defendant's motion for summary judgment in its entirety.  (*Tank I*, Case No. 11-C-4619, Dkt. No. 149, April 19, 2013 Mem. Op. and Order.)   Additionally, defendants Deutsche Telekom AG and T-Mobile International AG were dismissed from the case in *Tank I*, pursuant to Federal Rule of Civil Procedure 4(m), as service was never effectuated on those defendants.  (Id. at 11.)  Plaintiff appealed Judge Guzman's ruling in *Tank I* on April 29, 2013, and that appeal is currently pending.  *See Tank v. Deutsche Telekom*, AG, Case No. 11 C 4619, 2013 WL 1707954 (N.D. Ill. April 19, 2013), appeal docketed, No. 13-1912 (7th Cir. May 20, 2013).

## LEGAL STANDARD

Defendant's Motion to Dismiss does not specifically invoke a Federal Rule of Civil Procedure under which it proceeds for purposes of dismissing Plaintiff's FAC.  However, it is

apparent Defendant argues the claims asserted in Plaintiff's FAC should be dismissed for violating the rule against claim-splitting. (Def.'s Mem. at 2.) The doctrine of claim-splitting bars a plaintiff from alleging claims that arise from the same transaction or events that underlie claims brought in a previous suit. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). *Res judicata* is a defense which may be raised in a Fed. R. Civ. P. (12)(b)(6) motion for failure to state a claim, and the rule against claim-splitting follows from the doctrine of *res judicata*. *See Ennenga v. Starns*, 677 F.3d 766, 776 n.6 (7th Cir. 2012) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)). While it is not an affirmative defense enumerated in Rule 12(b), *res judicata* may be properly raised in a Rule 12(b)(6) motion under the rationale that a plaintiff may plead himself out of court. *Muhammad*, 547 F.3d at 878. Accordingly, Defendant's Motion to Dismiss is analyzed within the construct of Rule 12(b)(6).

When evaluating a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are taken as true, and all reasonable inferences derived from the factual allegations are drawn in favor of the plaintiff. *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013) (citation omitted). Although a plaintiff need not assert detailed factual allegations in the complaint, such factual allegations must satisfy a threshold of facial plausibility, allowing the court to draw a reasonable inference that the defendant is in fact liable for the misconduct alleged by the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

### The Doctrine of Res Judicata

The doctrine of *res judicata* stems from the general rule that a plaintiff must raise, in one proceeding, all possible claims for relief that arise out of a singular event or series of events, or else forgo the right to pursue such claims in a future action. *Bernstein v. Bankert*, 702 F.3d 964,

995 (7th Cir. 2012) (citations omitted). Also referred to as the doctrine of claim preclusion, the function of *res judicata* is to bar a party from alleging certain claims in federal court that the party *could have* raised in a prior suit litigated between the same parties. *See Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011) (internal citation and quotation marks omitted). *Res judicata* applies when the following three circumstances are present: "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bernstein*, 702 F.3d at 995 (quoting *Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996)).

A cause of action consists of "'a single core of operative facts' which give rise to a remedy." *Johnson*, 641 F.3d at 874 (quoting *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995)). "A claim is deemed to have 'identity' with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Bernstein*, 702 F.3d at 995 (quoting *Kratville*, 90 F.3d at 197). The determination of whether there is identity between parties in later and prior suits involves a fact-specific inquiry into the particular circumstances of a case. *See Bernstein*, 702 F.3d at 995 (internal citations and quotations omitted). Lastly, a decision by a court is considered a final judgment on the merits if it is "based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." *Bernstein*, 702 F.3d at 995 (quoting *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 944 (7th Cir. 1981)).

### The Doctrine of Claim-Splitting

The doctrine of *res judicata* and its application is the basis of the doctrine of claim-splitting; however, claim-splitting may be considered when the two actions are pending simultaneously, with neither action having reached final judgment on the merits. *Trading*

*Technologies International, Inc. v. BCG Partners, Inc.*, Case No. 10 C 715, 2011 WL 3157304, at *3 (N.D. Ill. July 26, 2011).  "Courts will dismiss a second suit pending between the same parties for claim splitting if the second suit would be barred by claim preclusion if it is assumed the first suit reached final judgment." *Id.* (citations omitted).  A district court has "a great deal of latitude and discretion in determining whether one action is duplicative of another." *Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929, 939 (N.D. Ill. 2006) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)).

## ANALYSIS

### *Judicial Notice of Matters of Public Record*

The proceedings of *Tank I* are properly considered in this analysis, as they are matters of public record.  Judicial notice is proper when facts are "(1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga*, 677 F.3d at 773-74 (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)).  District courts have previously determined that contents of court dockets and court proceedings from other cases satisfy the conditions cited by *Ennenga* and are judicially noticeable.  *See, e.g., Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 771 (N.D. Ill. 2011) (citing *Gen. Elec. Capital Corp.*, 128 F.3d at 1082).  A decision by the district court to take judicial notice is reviewed under an abuse of discretion standard.  *Gen. Elec. Capital Corp.*, 128 F.3d at 1081.

Defendant submitted a series of court filings from *Tank I* in support of its Motion to Dismiss.  (Def.'s Mot. Exs. A-H.)  However, the parties disagree over whether Exhibits G and H

are matters of public record that are properly judicially noticeable. Exhibits G and H are redacted transcripts of depositions taken of T-Mobile employees who were involved in the investigation of Plaintiff that led to his termination. Defendant contends judicial notice may be taken of these transcripts without converting this motion into a motion for summary judgment. (Def.'s Mem. at 3 n.1.) Plaintiff counters that these transcripts are not part of the public record and, therefore, not judicially noticeable. (Pl.'s Resp. at 1 n.1.) Defendant replies that Plaintiff himself made the transcripts part of the public record when he filed them under seal pursuant to a Court order in support of his opposition to the summary judgment motion in *Tank I*. (Def.'s Reply at 8 n.6.) These transcripts were filed under seal in *Tank I*.[3] Accordingly, Exhibits G and H are not considered in deciding Defendant's Motion to Dismiss.

### The TCA Claim

Plaintiff alleges Defendant violated Section 222(c)(1) of the TCA, which provides that Defendant, as a telecommunications carrier, may "only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories." 47 U.S.C. § 222(c)(1). Plaintiff claims Defendant accessed his and other employees' CPNI without prior approval and not for permissible purposes under the TCA. (FAC ¶¶ 32-34.) Plaintiff alleges he did not learn of Defendant's unauthorized access of his CPNI until May 2012, during discovery in *Tank I*. (*Id.* ¶ 37.)

---

[3] On June 17, 2013, the Seventh Circuit granted Plaintiff's motion to maintain these depositions, as well as other records from the district court proceeding in *Tank I*, under seal. *Tank v. Deutsche Telekom, AG*, Case No. 11 C 4619, 2013 WL 1707954 (N.D. Ill. April 19, 2013), *appeal docketed*, No. 13-1912 (7th Cir. May 20, 2013) at Dkt. No. 16.

Defendant presents three bases to dismiss the TCA claim: (1) the TCA claim violates the rule against claim-splitting; (2) Plaintiff did not plead damages specific enough to support a private right of action under the TCA; and (3) Plaintiff does not have the right to request injunctive relief under the TCA.

The TCA Claim and Claim-Splitting

Defendant argues the TCA claim violates the rule against claim-splitting because it arises out of the same set of operative facts as the Section 1981 claims from *Tank I*. (Def.'s Mem. at 7.) Defendant compares Plaintiff's TCA claim and the Section 1981 claims, contending that both rely on the facts alleged by Plaintiff regarding Defendant's investigation of Plaintiff to justify his termination. *(Id.* at 8.) Defendant relies on the Seventh Circuit's decision in *Cole v. Board of Trustees of University of Illinois*[4] to support this position. 497 F.3d 770 (7th Cir. 2007). The Court held in *Cole* that claim-splitting barred the plaintiff from raising a claim under the False Claims Act because the claims arose out of the "same core of operative facts" as previously litigated Title VII claims; the Seventh Circuit further noted that "[w]hether all of the facts of one particular claim are relevant to another claim is not a fact considered when determining whether a later-brought claim is barred by res judicata." *Cole*, 497 F.3d at 774.

Plaintiff seeks to distinguish his TCA claim from the Section 1981 claims, arguing that nothing in the *Tank I* complaint references Defendant's misuse of Plaintiff's phone records and

---

[4] In *United States ex rel. Lusby v. Rolls-Royce Corp.*, the Seventh Circuit addressed *qui tam* claims (not at issue in this case) and held that "the outcome of a private employment suit never precludes a *qui tam* action (or a False Claims Act suit directly by the United States)" for purposes of claim identity, noting that this decision "does not technically overrule *Cole*." 570 F.3d 849, 853 (7th Cir. 2009).

further noting that Plaintiff was unaware of Defendant's conduct with regards to his phone records when he asserted his claims in *Tank I*. (Pl.'s Resp. at 4-5.)

There is similarity in some of the facts alleged in the TCA claim and those pled in the Section 1981 claims in *Tank I*: Defendant conducted an investigation of Plaintiff in order to obtain incriminating evidence that would support a justifiable termination of Plaintiff, and in conducting that investigation, Defendant improperly accessed Plaintiff's CPNI without his consent. Plaintiff admits he learned of Defendant's alleged TCA violations in May 2012, but he did not seek to amend the complaint in *Tank I* until November 30, 2012.

However, upon closer examination, the core of operative facts alleged in support of the TCA claim are not the same as the core of operative facts that give rise to the *Tank I* Section 1981 claims. The complaint in *Tank I* contains no reference to the specific conduct alleged in the TCA claim, namely, Defendant's access of and use of Plaintiff's CPNI. While there is a general similarity in the facts alleged in the TCA claim and the Section 1981 claims, the key, operative facts are not the same. Although the investigation of Plaintiff was a part of the series of events that led to his termination, the primary facts alleged in support of the Section 1981 claims did not involve allegations that Defendant improperly accessed Plaintiff's telephone records. Rather, Plaintiff's Section 1981 claims questioned the validity of the investigation, specifically with regards to Defendant's refusal to allow Plaintiff to review the investigation records. Moreover, Defendant's investigation of Plaintiff is not alleged as the only source of facts to support Plaintiff's claims of discrimination and retaliation under Section 1981; Plaintiff alleges many other facts regarding Defendant's conduct toward Plaintiff as an employee to support the Section 1981 claims.

Because the TCA claim does not arise from the same core of operative facts as the Section 1981 claims, the TCA claim is not barred on the basis of claim-splitting. The TCA claim does not violate the rule against claim-splitting. *See Bernstein*, 702 F.3d at 995.

Damages Sufficient to Support a Private Right of Action

The TCA provides that a common carrier, such as Defendant, may be liable for damages to an individual injured by a violation of the TCA. 47 U.S.C. §§ 206-207. Defendant argues Plaintiff has no private right of action under the TCA because he did not plead that he, suffered damages as a result of the alleged violations. (Def.'s Mem. at 9.) In support of this argument, Defendant relies on a decision from the Southern District of New York. In *Conboy v. AT&T Corp.*, the court dismissed the plaintiffs' claim under Section 222 of the TCA because they failed to demonstrate that they suffered specific, cognizable damages flowing from AT&T's purported violation of the TCA. 84 F. Supp. 2d 492, 497-500 (S.D.N.Y. 2000), *affirmed*, 241 F.3d 242 (2d Cir. 2001). However, the decision in *Conboy* provides little precedential value here. Furthermore, the facts are distinguishable – here, Plaintiff has alleged specific damages, including damages to his reputation. In *Conboy*, the plaintiffs claimed damages arose from their payments to AT&T, and AT&T's failure to protect their private information. *Conboy*, 84 F. Supp. 2d at 499. That court held that damages were not alleged because AT&T was required to abide by the TCA, regardless of any payment of fees it receives from its customers. *Id.*

In stating Plaintiff's claim under the TCA in Count 1, Plaintiff alleges he was "damaged by [Defendant]'s conduct, including reputational damages as otherwise alleged herein." (FAC ¶ 114.) Plaintiff alleges that Defendant's improper access of his CPNI resulted in him suffering damages, including damages to his reputation. For purposes of a Rule 12(b)(6) motion, this is sufficient to plead cognizable damages. *See Iqbal*, 556 at 678.

<u>The Right to Injunctive Relief Under the TCA</u>

Defendant further contends that Plaintiff does not have the right to request injunctive relief for a violation of the TCA.  In the statement of relief sought on all counts, Plaintiff seeks a court order, directing Defendant to, among other actions, "adopt policies aimed at preventing and remedying any future violations of the Telecommunications Act of 1996."  (FAC at 30.) Defendant again relies on *Conboy* and reasons that simply because Plaintiff alleges that Defendant violated the TCA on occasions in the past, there is no basis to award Plaintiff injunctive relief going forward.

The Seventh Circuit has previously found that injunctive relief is available under the TCA:  "[T]he Telecommunications Act is silent on remedies beyond merely conferring a right to sue to enforce the Act.  However, such a conferral is presumed to entitle a successful plaintiff to the usual remedies, which include damages as well as injunctive relief."  *PrimeCo Personal Communications, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147, 1152-53 (7th Cir. 2003) (citation omitted).

In his FAC, Plaintiff asserted Defendant had no established policies or procedures in place to prevent TCA violations and, moreover, had apparently violated the TCA on a routine basis by obtaining others' CPNI without permission, in the same manner it obtained Plaintiff's information.  *(Id.* ¶¶ 35-36.)  Accordingly, Plaintiff adequately pleads that there is a legitimate threat that future violations will occur.

Because Plaintiff's TCA claim does not violate the rule against claim-splitting and because the FAC properly pleads damages pertaining to the TCA claim, Defendant's Motion to Dismiss is denied as to Count I of the FAC.

*The Title VII Claims and Claim-Splitting*

Plaintiff attempted to add three Title VII claims to the complaint in *Tank I*. It is apparent that the Title VII claims arise out of the same core of operative facts as the Section 1981 claims. A plain reading of the FAC in comparison to the complaint from *Tank I* demonstrates that, for purposes of *res judicata* and claim-splitting, the Title VII claims arise from the same facts as the Section 1981 claims. As discussed previously, the motion to amend the complaint in *Tank I* was denied by Judge Guzman.

Plaintiff asserts he waited to add the Title VII claims until well after the close of discovery in *Tank I* because the EEOC had not yet sent him a right-to-sue letter. (Def.'s Mot. Ex. D at Tr. 2:18-23, Nov. 30, 2012.) However, the Seventh Circuit has consistently held that waiting for a right-to-sue letter from the EEOC is an insufficient reason to avoid claim-splitting because:

> a litigant in this position has at least five options to preserve his claim: (1) he can ask the EEOC or its state counterpart to accelerate the administrative process; (2) he can seek an agreement with his former employer not to plead the statute of limitations; (3) he can agree with his employer to split a single claim into two or more suits; (4) he can delay the filing of the first suit until the last possible moment; or (5) he can request that the court postpone or stay the first case until he receives the right-to-sue letter . . . .

*Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011) (internal citations and quotations omitted). In this instance, Plaintiff has availed himself of none of these options. Accordingly, Plaintiff's Title VII claims are barred by claim-splitting.

Based on the recent ruling by Judge Guzman on Defendant's motion for summary judgment in *Tank I*, Plaintiff's Title VII claims are also barred by *res judicata*. Judge Guzman granted the motion for summary judgment in its entirety, including summary judgment on the Section 1981 claims. Summary judgment on the merits is a final judgment for *res judicata*

14

purposes.  While Plaintiff has filed an appeal of this summary judgment ruling in *Tank I*, the finality of a judgment is not affected by the pendency of an appeal of that judgment.  *See, e.g.*, *Kurek v. Pleasure Driveway & Park Dist.*, 557 F.2d 580, 595 (7th Cir. 1977).  Because the Title VII claims here and the Section 1981 claims in *Tank I* involve the same parties and the same core of operative facts and because final judgment was entered on the merits for the Section 1981 claims, the Title VII claims in the FAC are barred by *res judicata*.

The Title VII claims are dismissed, and Defendant's Motion to Dismiss is granted with respect to Counts II-IV of Plaintiff's First Amended Complaint.

## CONCLUSION

Defendant's Motion to Dismiss is denied in part and granted in part.  For the reasons provided above, Plaintiff has stated a claim under the TCA upon which relief may be granted, and Defendant's Motion to Dismiss Count I is denied.  Counts II, III, and IV of the First Amended Complaint are barred on the basis of both claim-splitting and *res judicata* and are dismissed with prejudice.

Date:   August 15, 2013

JOHN W. DARRAH
United States District Court Judge