UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAJESH TANK, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:12-cv-10261 |
| | ) |
| T-MOBILE USA, INC., | ) Judge John W. Darrah |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On September 17, 2013, Rajesh Tank filed a Second Amended Complaint against T-Mobile USA, Inc. ("T-Mobile"), alleging one count of violating his rights under the Telecommunications Act of 1996, 47 U.S.C. § 201 *et seq.* ("TCA"). T-Mobile now moves for summary judgment of the Second Amended Complaint. The Motion has been fully briefed.

## BACKGROUND

Local Rule 56.1(a) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue" and to cite to the relevant admissible evidence supporting each fact. Local Rule 56.1(b)(3)(B) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *Martin v. Gonzalez*, 526 F. App'x 681, 682 (7th Cir. 2013). Under Local Rule 56.1(b)(3)(C), the nonmoving party may file a statement of additional facts, and the moving party may submit a concise reply under Local Rule 56.1(a)(3). To the extent that a purported fact is merely a legal conclusion, it is disregarded. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371 (7th Cir. 2008).

A litigant's failure to respond to a Rule 56.1 statement, or to dispute the statement without "specific references to the affidavits, parts of the record, and other supporting material," results in the court's admitting the uncontroverted statement as true. *Banks v. Fuentes*, 545 F. App'x 518, 520 (7th Cir.2013). Similarly, responses containing argumentative denials or extraneous information do not properly dispute a fact. *See Graziano v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005).

T-Mobile is a telecommunications carrier with its headquarters in Bellvue, Washington. (Def.'s SOF ¶ 3.)[1] Tank served as T-Mobile's Vice President of Engineering and Operations from September 25, 2006, until his termination on August 4, 2010. (Def.'s SOF ¶ 5.) During this time, Tank worked in T-Mobile's office in Downers Grove, Illinois, and reported to Senior Vice President of Engineering and Operations Neville Ray. (*Id.*)

In September of 2007, a T-Mobile employee complained to the Human Resources department that Tank had engaged in "abrasive, unprofessional, demoralizing, and accusational (sic)" conduct, prompting an investigation. (Def.'s SOF ¶¶ 6-7.) The investigation turned up a perception of favoritism exhibited by Tank to certain employees. (Def.'s SOF ¶ 8.) In light of Tank's leadership position, Ray placed Tank under a corrective action coaching plan. (Def.'s SOF ¶ 9.)

On May 20, 2010, one of T-Mobile's managing attorneys sent an email to the Senior Vice President of its Legal Department, after receiving an invoice from outside counsel that had been retained to attempt to obtain a position for Tank on the Illinois Science and Technology Commission. (Def.'s SOF ¶ 10.) The attorney questioned whether "paying outside counsel $535

---

[1] Admitted Statements of Fact are designated as either Defendant's ("Def.'s SOF") or Plaintiff's ("Pl.'s SOF"), with the corresponding paragraph referenced.

an hour to help achieve this might be a dubious use of T-Mobile resources." (*Id.*) Just two days later, T-Mobile received an anonymous email, purportedly from one of its vendors, alleging that Tank had inappropriate relationships with his indirect reports; allowed a banned contractor to work on a T-Mobile project under a false name; and "single-handedly destroyed company morale and driven away some of the best, most competent persons [the vendor] had a chance to work with in the wireless industry." (Def.'s SOF ¶ 11.) As a result of these allegations, T-Mobile's Corporate Investigations team opened an investigation. (Def.'s SOF ¶ 12.)[2]

Ryan Messinger was an investigator for Corporate Investigations. (Def.'s SOF ¶ 14.) During the course of Messinger's investigation, he accessed certain of Tank's Customer Proprietary Network Information ("CPNI"). (Def.'s SOF ¶ 15.) CPNI includes information regarding the quantity, technical configuration, type, destination, location, and amount of use of telecommunications service provided to a customer by a telecommunications provider, as well as information contained in the bills for the service received by the customer. (Def.'s SOF ¶ 16.) On May 27, 2010, June 1, 2010, and July 7, 2010, Messinger accessed Tank's wireless account

---

[2] Several of Tank's additional statements of fact allude to a different motivation for the initiation of the investigation: namely, that he was being retaliated against for filing a complaint with the Human Resources Department alleging that other employees had made racist comments. However, as described more fully in this Court's previous Memorandum Opinion and Order (Dkt. No. 30), this issue has already been ruled upon in Tank's separately filed suit, *Tank v. Deutsche Telekom, AG*, No. 11 C 4619, 2013 WL 1707954 (N.D. Ill. Apr. 19, 2013), in which summary judgment was granted against Tank. Moreover, the Seventh Circuit has now affirmed that summary judgment. *Tank v. T-Mobile*, No. 13-1912, 2014 WL 3360476 (7th Cir. Jul. 10, 2014). Accordingly, Tank is collaterally estopped from re-litigating these issues here. *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013) ("The party against whom the issue had been resolved must have had, first, a "full and fair opportunity" to litigate the issue in the previous suit . . . and, second, a meaningful opportunity to appeal the resolution of the issue.").

Tank's additional statements of fact are also similar to those in *Deutsche Telekom* in that they far exceed the "short numbered paragraphs" permitted by Local Rule 56.1. As the district court warned, "Tank disregards the local rules at his own peril." *Deutsche Telekom*, 2013 WL 1707954, at *1. T-Mobile engages in the same disregard for the local rules, albeit to a significantly lesser degree, at its own peril.

information[3] through T-Mobile's record system, Samson, which automatically displays account balance information. (Def.'s SOF ¶ 17; Pl.'s SOF ¶ 17.) Account balance information is CPNI. (*Id.*) In addition to the automatic display of account information, other types of CPNI – like call data records ("CDRs"), showing which numbers are dialed and the duration of the calls – can be accessed. (Pl.'s SOF ¶¶ 4, 6.) There is no way to electronically track specifically which CPNI has been viewed when an account is accessed on Samson. (Pl.'s SOF ¶ 7.)

Messinger interpreted the allegations prompting the investigation to include concerns that Tank was misusing T-Mobile-owned telephones by distributing them without authorization, known as "downward distribution." (Def.'s SOF ¶ 18.) However, none of the allegations against Tank asserted misuse of company phones or devices. (Pl.'s SOF ¶¶ 11, 14.) Messinger claims to have accessed Samson to determine which numbers were associated with Tank's account, but does not recall ever obtaining that information. (Def.'s SOF ¶ 18.)

After the investigation, Messinger prepared an investigation report and a policy violations report that substantiated the allegations that Tank demonstrated favoritism among employees, made questionable use of T-Mobile funds, and allowed a banned contractor to work on T-Mobile projects. (Def.'s SOF ¶¶ 20-21.) Based on the investigation's results, Tank was terminated. (Def.'s SOF ¶ 23.)

**LEGAL STANDARD**

Summary judgment is appropriate when there remains "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *See Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). The party seeking

---

[3] It is unclear from the parties' statements of fact whether the accessed account was a work account provided to Tank by T-Mobile, or a personal account that Tank purchased through T-Mobile.

4

summary judgment must first identify those portions of the record that establish there is no genuine issue of material fact. *U.S. v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To survive such a showing, the nonmoving party must "present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 433 F.3d 1024, 1030-31 (7th Cir. 2006) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995)). Opposition to summary judgment requires more than a scintilla of evidence or some metaphysical doubt. *Nat'l Inspection Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010) (citations omitted). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010) (citations omitted). The court does not make credibility determinations or weigh conflicting evidence. *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 799 (7th Cir. 2011) (citations omitted).

**ANALYSIS**

Tank's Second Amended Complaint contains a single count, alleging violations of the Telecommunications Act of 1996 (the "Act"), which states that "[e]very telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to . . .

customers." 47 U.S.C. § 222(a). The Act specifically covers the confidentiality of CPNI:

> Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

47 U.S.C. § 222(c). The parties agree that Tank did not give T-Mobile permission to access his CPNI, that at least Tank's account balance was viewable when Messinger accessed Tank's account, and that account balance information qualifies as CPNI subject to the confidentiality requirements set out above.

*Exceptions to CPNI Confidentiality*

T-Mobile argues that Messinger's access of Tank's CPNI falls within one of the Act's exceptions. A carrier is not prohibited from "using, disclosing, or permitting access to" CPNI "to protect the rights or property of the carrier, or to protect users of those services and other carriers from fraudulent, abusive, or unlawful use of, or subscription to, such services." 47 U.S.C. § 222(d)(2). T-Mobile contends that this exception "explicitly empowers T-Mobile to access CPNI as part of its efforts to protect its rights and property, which is precisely what occurred during the Tank investigation." (Def.'s Mot. for Summary Judgment at 6.) However, T-Mobile supplies no support for its position that the investigation in dispute here is in furtherance of the protection of the type of rights or property considered by Subsection 222(d)(2).[4]

---

[4] There is little case law on this point. *See, e.g., ASIS Internet Servs. v. Active Response Grp.*, No. C07 6211 THE, 2008 WL 2129417, at *3 (N.D. Cal. May 20, 2008) (merely quoting

T-Mobile argues that at least part of the reason Messinger accessed Tank's CPNI was to investigate possible "downward distribution" of T-Mobile phones. Even if this purported motivation would bring Messinger's investigation within the exceptions specified by Subsection 222(d)(2), it is still a disputed fact. For example, "none of the allegations against Tank involved misusing cellular telephones or devices." (Pl.'s SOF ¶ 11.) In support of this argument, Tank also asserts that "Messinger wrote numerous memos, engaged in numerous email communications, and extensively documented his investigation against Tank . . . [but] did not document anything about investigating any alleged downward distribution by Tank." (*Id.* ¶ 14.) Whether Messinger's access of Tank's CPNI was to protect T-Mobile's property rights is disputed. Accordingly, summary judgment is not appropriate.

*Damages*

Additionally, T-Mobile argues that Tank is prevented from pursuing his claim because Tank cannot establish that T-Mobile's review of Tank's CPNI caused him damages. T-Mobile offered a similar argument in its motion to dismiss (Dkt. no. 19), and this Court held that Tank had alleged damages to his reputation sufficient to survive the motion. (Dkt. No. 30.) Therefore, the sole question here is whether the evidence, viewed in a light most favorable to Tank, could support a finding of damages. T-Mobile's argument against such a finding effectively proceeds

---

§ 222(d)(2) without analysis in discovery dispute); *ICG Commc'ns., Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 614 n. 5 (N.D. Cal 2002) (noting § 222(d)(2) is not implicated in discovery disputes). Therefore, the legislative history is instructive. "The conferees intend new subsection 222(d)(2) to allow carriers to use CPNI in limited fashion for credit evaluation to protect themselves from fraudulent operators who subscribe to telecommunications services, run up large bills, and then change carriers without payment." H.R. Conf. Rep. 104-458, 104th Cong., 2nd Sess. at 205 (1996). The limited purpose expressed by the Conference Committee is consistent with preserving the carrier's "duty to protect the confidentiality of proprietary information of, and relating to . . . customers."

along two theories: (1) that various undisputed facts prove that Tank was not injured and (2) that Tank has failed to allege injury with the requisite specificity.

With respect to undisputed facts tending to disprove injury, T-Mobile first argues that Messinger recalls accessing only Tank's account balance information. This, however, is far from an undisputed fact. Messinger, in his deposition, originally did not recall accessing any CPNI at all, thus presenting a question of credibility not appropriately reached in deciding a motion for summary judgment. Tank also points out that there is no electronic record of precisely which CPNI has been viewed once an account is accessed. Therefore, whether and which CPNI was accessed beyond account balance information is still in dispute. T-Mobile further argues that none of Tank's CPNI appeared in any documents related to the investigation and that Tank did not even discover his CPNI had been accessed until nearly two years after the access. However, telecommunication carriers are liable for damages sustained by customers whose CPNI was accessed for reasons other than to provide telecommunications service. 47 U.S.C. §§ 206, 207, 222(c). There is no requirement within the Act that CPNI be retained in documents or that a consumer be aware of access to his CPNI at the time access occurred. These facts do not entitle T-Mobile to judgment as a matter of law.

It is true that Tank must allege specific damages in order to recover under Sections 206 and 207 of the Act. In support of its argument that Tank has not so alleged, T-Mobile again cites *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001),[5] and again ignores key factual distinctions. In *Conboy*, the Second Circuit found that the plaintiffs had expressly stated that

---

[5] As made clear in the previous Memorandum Opinion and Order, *Conboy* "provides little precedential value here." (Dt. No. 30 at 12.) For this reason, the Court will not reconsider its previous decision that injunctive remedies are available for violations of Section 222.

they had "*not* alleged emotional distress nor similar damages for violation of the Telecommunications Act." *Id.* at 250 (emphasis in original).  Here, Tank has affirmatively claimed, *inter alia*, that he was emotionally distressed by the discovery that T-Mobile had accessed his CPNI.  Therefore, summary judgment cannot be granted on this basis.

## CONCLUSION

Genuine disputed issues of material fact exist, as discussed above.  Accordingly, T-Mobile's Motion for Summary Judgment [41] is denied.

Date:   8/20/2014

JOHN W. DARRAH
United States District Court Judge