UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAJESH TANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-10261 |
| v. ) | |
| ) | Judge John W. Darrah |
| T-MOBILE USA, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

On September 17, 2013, Rajesh Tank filed a Second Amended Complaint against T-Mobile USA, Inc. ("T-Mobile"), alleging one count of violating his rights under the Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. § 201 *et seq*. Defendant moved for Summary Judgment on November 22, 2013; and that motion was denied on August 20, 2014. Defendant filed a second Motion for Summary Judgment on January 1, 2015.

## **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* Local Rule 56.1(b)(3)(C) permits the nonmovant to submit "any additional facts that require the denial of summary judgment. . . ." To overcome summary judgment, "the nonmoving party must file a response to each numbered paragraph in the moving party's statement." *Schrott v.*

*Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. *Id.* A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to the specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the nonmovant's response only provides extraneous or argumentative information, the response will fail to constitute a proper denial of the fact, and the fact will be admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Legal conclusions or otherwise unsupported statements, including those that rely upon inadmissible hearsay, will be disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

## BACKGROUND[1]

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Defendant T-Mobile is a Delware corporation with its headquarters in Bellevue, Washington. (Def's SOF, ¶ 3.) T-Mobile provides pre-paid cellular wireless telephone service, among other services. (*Id.* at ¶ 4.) Rajesh Tank worked for T-Mobile, or its predecessor, from approximately 2000 to his termination on August 4, 2010. (*Id.* at ¶ 5.) From September 25, 2006 until his termination, Tank was the Vice President of Engineering and Operations and worked at T-Mobile's corporate office in Downers Grove, Illinois. (*Id.* at ¶ 6.) During that time, Tank reported to Neville Ray, Senior Vice President of Engineering and Operations. (*Id.* at ¶ 7.)

---

[1] This Court previously summarized these facts in the first summary judgment ruling. *See* (Dkt. 85.)

On May 22, 2010, an anonymous e-mail from a T-Mobile vendor was received through the Internal Investigations mailbox, alleging that: (1) Tank had inappropriate personal relationships with his indirect reports; (2) Tank had allowed a banned contractor to work for T-Mobile under a false name; and (3) Tank had "single-handedly destroyed company morale and driven away some of the best, most competent persons that [the vendor] had a chance to work with in the wireless industry." (*Id.* at ¶¶ 10-11.) Corporate Investigations began an investigation of Tank in May 2010. (Pl's SOF, ¶ 7.) Corporate Investigations is an internal department in charge of investigating allegations in regard to corporate matters, including T-Mobile policy and the Code of Conduct. (Def's SOF, ¶15.)

As part of this investigation, Ryan Messinger accessed some of Tank's Consumer Proprietary Network Information ("CPNI"). (*Id.* at ¶ 16.) T-Mobile maintains records regarding customers' accounts on several databases, including one called Samson. (Pl's SOF at ¶ 5.) Samson's database includes various types of CPNI. (*Id.*) CPNI includes the quantity, configuration, type, destination, location, amount, date, and time of calls. (*Id.* at ¶ 4.) When a record is accessed on Samson, CPNI is displayed. (*Id.* at ¶ 6.) Messinger accessed Tank's CPNI on May 27, 2010; June 1, 2010; and July 7, 2010. (*Id.* at ¶ 13.) Messinger also accessed Angelique Stephen's T-Mobile wireless account information on May 25, 2010; May 26, 2010; May 27, 2010; June 1, 2010; June 11, 2010; and July 7, 2010. (*Id.* at ¶ 19.) After the investigation, T-Mobile terminated Tank's employment. (Def's SOF, ¶ 23.)

After being terminated, Tank brought suit against T-Mobile, alleging violations of 42 U.S.C. § 1981 and various state law claims. (Def's SOF, ¶ 24.) Tank learned that T-Mobile accessed his CPNI during the course of discovery in Tank's § 1981 suit. (*Id.* at ¶ 25.) Tank remains a customer of T-Mobile's pre-paid wireless services. (Def's SOF, ¶ 36.)

## LEGAL STANDARD

Summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts are required to view all facts and make reasonable inferences "in the light most favorable to" the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute of material facts exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To overcome a motion for summary judgment, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The nonmovant must show "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248).

## ANALYSIS

*Standing*

T-Mobile argues that Tank lacks Article III standing to pursue damages and injunctive relief. Article III standing contains three elements:

> First, the plaintiff must have suffered "an injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" . . . Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

The "Telecommunications Act is silent on remedies beyond merely conferring a right to sue to enforce the Act." *PrimeCo Pers. Commc'ns, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147, 1152-53 (7th Cir. 2003). However, the right to sue to enforce the act "is presumed to entitle a successful plaintiff to the usual remedies, . . . , which include damages as well as injunctive relief." *Id.* (citing *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 66-76 (1992)).

T-Mobile argues that Tank's injuries are not connected to their alleged wrongdoing. Specifically, T-Mobile argues that Tank's damages flow from his lost wages, which resulted from his termination and not from T-Mobile's access of his CPNI. In his Second Amended Complaint, Plaintiff claims "lost wages and other benefits and suffered other serious losses including, but not limited to, attorneys' fees and legal costs" as well as "inconvenience, embarrassment, humiliation, loss of enjoyment of life, and emotional and physical distress." (Compl. at ¶ 25.) As discussed in the ruling on the previous Motion for Summary Judgment, the TCA provides that telecommunication carriers are liable for damages sustained by customers whose CPNI was accessed for reasons other than to provide telecommunications services. 47 U.S.C. §§ 206, 207, 222(c). T-Mobile still has not cited to any authority showing that damages for "inconvenience, embarrassment, humiliation, loss of enjoyment of life, and emotional and physical distress" are unavailable under the TCA.

T-Mobile also argues that Tank has not shown his emotional damages with the required specificity. Usually "bare allegations by a plaintiff that the defendant's conduct made him 'depressed,' 'humiliated,' or the like are not sufficient to establish injury." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) (citing *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000); *United States v. Balistrieri*, 981 F.2d 916, 931-32 (7th Cir. 1992)). However, Tank has sufficiently shown facts that his job performance suffered, his relationship with his wife and

5

family suffered, and that he suffered physical manifestations of stress and depression. (Def's SOF ¶¶ 23-26.) T-Mobile further argues that Tank's injuries will not be redressed because he cannot be awarded damages for lost wages. Again, Tank has alleged damages including "inconvenience, embarrassment, humiliation, loss of enjoyment of life, and emotional and physical distress." (Compl. at ¶ 25.) Nor has T-Mobile shown why Tank's injuries could not be redressed by damages. While T-Mobile disputes that Tank's injuries did not stem from his termination and lost wages, this is a question of fact for the jury.

Finally, T-Mobile disputes Tank's standing to seek injunctive relief because: (1) there is no threat of future injury and (2) Tank voluntarily maintains a T-Mobile account. Tank has asserted that T-Mobile had no established policies or procedures in place to prevent TCA violations and, moreover, had apparently violated the TCA on a routine basis by obtaining others' CPNI without permission, in the same manner it obtained Plaintiff's information. (Compl. ¶¶ 20-21.) T-Mobile has not developed any facts to show that such a policy is in place or that they do not routinely violate the TCA by obtaining customers' CPNI without permission. Therefore, they have not shown, on summary judgment, that there is no threat of future injury. T-Mobile has not shown that injunctive relief is unavailable.

*Res Judicata*

T-Mobile argues that Tank's claim under the TCA is barred by *res judicata* because his attempt to add a TCA claim to his previous employment-discrimination action was denied. *Res judicata* applies when the following three circumstances are present: "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bernstein v. Bankert*, 702 F.3d 964, 995 (7th Cir. 2012) (quoting *Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996)). *Res judicata* bars a party from alleging certain claims in

federal court that the party could have raised in a prior suit litigated between the same parties. *See Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011) (internal citation and quotation marks omitted). The doctrine stems from the general rule that a plaintiff must raise, in one proceeding, all possible claims for relief that arise out of a singular event or series of events, or else forego the right to pursue such claims in a future action. *Bernstein*, 702 F.3d at 995 (7th Cir. 2012) (citations omitted).

A cause of action consists of "'a single core of operative facts' which give rise to a remedy." *Johnson*, 641 F.3d at 874 (quoting *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995)). "A claim is deemed to have 'identity' with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Bernstein*, 702 F.3d at 995 (quoting *Kratville*, 90 F.3d at 197). The determination of whether there is identity between parties in later and prior suits involves a fact-specific inquiry into the particular circumstances of a case. *See id.* at 995 (internal citations and quotations omitted). Lastly, a decision by a court is considered a final judgment on the merits if it is "based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." *Id.* (quoting *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 944 (7th Cir. 1981)).

Some courts have held that the "decision to deny a litigant an opportunity to amend his complaint to add new claims constitutes a final judgment on those putative new claims for *res judicata* purposes." *Anderson v. Guaranteed Rate, Inc.*, No. 13 CV 431, 2013 WL 2319138, at *4 (N.D. Ill. May 28, 2013); *see also Landscape Properties v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir. 1997); *Johnson v. SCA Disposal Services*, 931 F.2d 970, 974-76 (1st Cir. 1991); *Huck v. Dawson*, 106 F.3d 45, 49-50 (3d Cir. 1997). As previously held by this Court, "the TCA claim does not arise from the same core of operative facts as the Section 1981 claims." (Dkt. 30,

p. 12.) T-Mobile argues that statements made by Tank during his depositions now prove that they are the same operative facts and issues. As this Court held: "While there is a general similarity in the facts alleged in the TCA claim and the Section 1981 claims, the key, operative facts are not the same." (Dkt. 30, p. 11.) Although the investigation of Plaintiff was a part of the series of events that led to his termination, the primary facts alleged in support of the Section 1981 claims did not involve allegations that Defendant improperly accessed Plaintiff's telephone records." (*Id.*) Whether Plaintiff believes the issues to be "one" does not affect this analysis. Defendant has not shown that the current action is barred by *res judicata*.

*Lawful Access*

Finally, T-Mobile argues that their access to Tank's CPNI was lawful. The TCA explicitly authorizes carriers to use, disclose, or access CPNI "to protect the rights or property of the carrier." 47 U.S.C. § 222(d)(2). T-Mobile argues that accessing his CPNI to investigate complaints made against Tank was necessary to protect T-Mobile's rights and property. As this Court held in the first summary judgment ruling, the legislative history is instructive on this point: "The conferees intend new subsection 222(d)(2) to allow carriers to use CPNI in limited fashion for credit evaluation to protect themselves from fraudulent operators who subscribe to telecommunications services, run up large bills, and then change carriers without payment." H.R. Conf. Rep. 104-458, 104th Cong., 2d Sess. at 205 (1996). T-Mobile argues that the plain meaning of the statute is clear, so the legislative history is inapplicable. However, the argument could be made that every decision a company makes involves "the rights or property of the carrier," which would swallow the duty of the carrier "to protect the confidentiality of proprietary information of, and relating to . . . customers" whole. When interpreting a statute, a court "first and foremost [ ] give[s] words their plain meaning unless doing so would frustrate the

8

overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *See United States v. Vallery*, 437 F.3d 626, 630 (7th Cir.2006).  Here, adopting T-Mobile's broad interpretation of the exception would frustrate the purpose of the scheme, lead to absurd results, and contravene clearly expressed legislative intent.  Whether Messinger's access of Tank's CPNI was to protect T-Mobile's property rights in investigating "downward distribution" of T-Mobile phones, and thus falls under the exception, remains a question of material fact that is disputed.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment [109] is denied.

Date: _____May 26, 2015_____  /s/ _____
JOHN W. DARRAH
United States District Court Judge